**O**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAKIM INDUSTRIES, INC., dba QUALI-TECH MFG. CO.,<br><br>                     Plaintiff,<br>     v.<br><br>LINZER PRODUCTS CORP.,<br><br>                  Defendant. | Case No. 2:12-cv-04976 ODW(JEMx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS [70]** |

**I.    INTRODUCTION**

Linzer moves for an award of attorneys' fees and costs on the grounds that Quali-Tech's proposed claim-construction and infringement allegations were objectively baseless and brought in bad faith.  For the reasons discussed below, the Court **GRANTS** Linzer's motion and awards an adjusted $106,208.15 in attorneys' fees and $3,011.63 in costs.[1]

**II.    BACKGROUND**

On August 30, 2012, Quali-Tech filed an Amended Complaint accusing Linzer of infringing U.S. Patent No. 7,120,963 by selling its Trim and Touch-Up product. (ECF No. 33.)  The '963 Patent concerns a mini paint-roller mounting assembly.  All

---

[1] Having carefully considered the papers filed in support of and in opposition to Linzer's Motion for an Award of Attorneys' Fees and Costs, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

claims of the '963 Patent require "an outer cylinder, upon which the paint roller is mounted" and "an end piece which is inserted into and surrounded by the outer cylinder." ('963 Patent 4:5–7.)  The claims of the '963 Patent therefore have three relevant limitations: (1) an outer cylinder; (2) a paint roller; and (3) that the paint roller be mounted upon the outer cylinder.  (*Id.*)  For Quali-Tech's infringement allegation to have been reasonable, Quali-Tech must have determined that Linzer's product embodied each of these three limitations of the '963 Patent.

Linzer's Trim and Touch-Up product joins a paint roller directly onto an end piece.  (ECF No. 58, at 1.)  It definitively does not contain a distinct outer cylinder. But Quali-Tech maintained that the inner core of the paint roller mounted to the Trim and Touch Up's end piece contains (or doubles as) the outer cylinder claimed in the '963 Patent literally or by equivalence.  (ECF No. 59, at 1.)  Quali-Tech contended that the bare paint-retaining fabric of the paint roller, lacking its inner core, would qualify as a "paint roller."  (ECF No. 52, at 2.)

Linzer argued that its product could not literally infringe the '963 Patent because it has no distinct outer cylinder.  (ECF No. 58, at 1.)  Linzer further asserted that even if the Court accepted Quali-Tech's equivalence argument—and relied on the inner core of the paint roller as the outer cylinder—Linzer's product would *still* not infringe the '963 Patent because the Trim and Touch Up product would then fail to mount a paint roller upon the outer cylinder.  (*Id.*)  Without the inner core of the paint roller, Linzer noted, all that would be left is a strip of fabric that lacked the rigidity necessary to be mounted upon an end piece to roll paint.  (*Id.*)  Whether Linzer's product contained an outer cylinder therefore depended on this Court's construction of the term "paint roller."

Linzer notified Quali-Tech that it intended to move for summary judgment of non-infringement in its initial Joint Rule 26(f) Statement on October 1, 2012.  (ECF No. 37.)  On November 8, 2012, Linzer submitted a pre-motion letter seeking leave to file a Motion for Summary Judgment of Non-Infringement of all asserted claims of

1   the '963 Patent, as required by the Court's Standing Order Regarding Patent Cases.

2   (ECF No. 48.)  The Court allowed Linzer's early motion and requested that the parties

3   also propose construction of the phrase "an outer cylinder, upon which the point roller

4   is mounted" in their briefing.  (ECF No. 50.)

5        Adhering to the ordinary, common, and widely accepted commercial meaning

6   of "paint roller," the Court substantially adopted Linzer's proposed construction.  The

7   Court found that "paint roller" means a rigid cylindrical core covered externally by

8   paint-absorbing material.  (ECF No. 63, at 8.)

9        For the reasons addressed below, the Court finds that Quali-Tech acted in bad

10  faith in filing a baseless infringement action and continuing to pursue it despite

11  lacking evidence of infringement.  The Court therefore **GRANTS** Linzer's Motion for

12  an Award of Attorneys' Fees and Costs.

13                     **III.   LEGAL STANDARD**

14       Meritless patent litigation places a particular strain on judicial and party

15  resources.  In recognition of this strain, section 285 of the Patent Act gives district

16  courts discretion to award fees to prevailing parties in qualifying cases.

17  35 U.S.C. § 285.  Attorneys'-fees awards are appropriate in "exceptional cases" in

18  which sanctions are necessary to deter parties from bringing clearly unwarranted suits.

19  *Id.*; *Automated Bus. Cos. v. NEC Am., Inc.*, 202 F.3d 1353, 1354 (Fed. Cir. 2000);

20  *Eon–Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011).

21       When deciding whether to award attorneys' fees, courts engage in a two-step

22  inquiry.  First, the Court must determine whether the prevailing party has proved by

23  clear and convincing evidence that the case is "exceptional."  *MarcTec, LLC v.*

24  *Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).  If the Court finds that the

25  case is exceptional, it must then determine whether an award of attorneys' fees is

26  justified.  *Id.* at 916.

27  / / /

28  / / /

Absent misconduct in the litigation or in securing the patent, a case is exceptional under § 285 if (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Litigation is objectively baseless if the allegations are "such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

Reasonable minds can differ as to claim construction, and losing constructions can nonetheless be nonfrivolous. But a threshold exists below which a claim construction is "so unreasonable that no reasonable litigant could believe it would succeed." *iLor, LLC v. Google, Inc.*, 631 F.3d 1372, 1378 (Fed. Cir. 2011); *Raylon v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1369 (Fed. Cir. 2012) (finding the plaintiff's proposed claim construction to be unsupported by the record and so frivolous as to warrant sanctions); *MarcTec*, 664 F.3d at 919 (finding the plaintiff's proposed claim construction "so lacking in any evidentiary support that assertion of this construction was unreasonable and reflects a lack of good faith").

Once the Court determines that the challenged litigation is objectively baseless, it may examine the litigant's subjective motivation. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61(1993). The Court presumes that a patent infringement assertion is made in good faith. *Brooks Furniture*, 393 F.3d at 1382. But if the record indicates by clear and convincing evidence that a patentee was manifestly unreasonable in assessing and pressing its infringement allegations, then a court may infer that the claims were brought in bad faith. *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810–11 (Fed. Cir. 1990). A patent holder's continued pursuit of an infringement claim is manifestly unreasonable if based on "wrongful intent, recklessness, or gross negligence." *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (quoting *Eltech Sys.*, 903 F.2d at 811).

/ / /

Even in exceptional cases the decision to award fees and the amount of the award are within the Court's discretion. *Brooks Furniture*, 393 F. 3d at 1382. The decision is based on a retrospective look at the entire case and does not turn on whether the patentee's position would have been reasonable at the time of filing the complaint or pleading. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1355 (Fed. Cir. 2012).

## IV.   DISCUSSION

The Court finds that Quali-Tech's infringement suit qualifies as an exceptional case warranting an award of attorneys' fees. Both Quali-Tech's proposed construction of "paint roller" and its assessment and pursuit of its infringement allegations were objectively baseless and lacked any evidentiary support. Further, Quali-Tech's actions, when taken in the aggregate, give rise to an inference that Quali-Tech pursued this litigation in bad faith. For the reasons discussed below, the Court **GRANTS** Linzer's Motion for an Award of Attorneys' Fees and Costs.

### A. Quali-Tech's infringement suit qualifies as an exceptional case

The outcome of this litigation rested upon the resolution of two inquiries: (1) the construction of the claim term "paint roller," and (2) whether Linzer's product embodied the claim language as construed, either literally or under the doctrine of equivalents. The Court addresses each issue in turn.

> *1.   Quali-Tech's proposed construction of "paint roller" was objectively baseless*

Quali-Tech argues that its proposed construction of the term "paint roller" (bare paint retaining material) was reasonable for three reasons: (1) this case presented complex claim-construction issues; (2) the '963 Patent does not explicitly define the term "paint roller"; and (3) it relied on its experts' testimony as the bases for its claim construction. (Opp'n 1, 4.) These contentions fail to save Quali-Tech's proposed claim construction.

/ / /

First, the Court disagrees with Quali-Tech's insistence of complexity. The ordinary meaning of "paint roller" is readily apparent. The claim language required nothing more than application of the widely accepted meaning of commonly understood words. Ignoring this, Quali-Tech persisted in its argument that "paint roller" would be understood by a person of ordinary skill in the art to mean bare paint-retaining materials—and *not* a standard, commercially available roller composed of paint-retaining material affixed to a rigid inner core. (Kim Decl. ¶ 13.) This proposed construction fell dismally below the reasonableness threshold. A person of ordinary skill in the art would understand that a paint roller necessarily must include a core of sufficient rigidity to enable the user to mount it on to roller handles and roll paint. Quali-Tech's proposed construction ignored this structural and functional requirement and was plainly untenable.[2]

Quali-Tech's attempt to salvage its proposed construction with the argument that the '963 Patent does not specifically describe what is meant by the term paint roller similarly fails. (Opp'n 1.) It is true that the '963 Patent does not explicitly define the term "paint roller." But explicit definition is unnecessary. Quali-Tech should be aware that the Court does not look at the *ordinary* meaning of a claim term in a vacuum. Rather, the Court looks at the ordinary meaning in the context of the entire intrinsic record. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

The specification describes a paint roller's characteristics in sufficient detail to demonstrate that Quali-Tech's proposed construction was wholly inconsistent with the language of the '963 Patent. The specification describes an ordinary, standard paint roller that contains an inner core capable of being mounted upon the outer cylinder. ('963 Patent at 2:53–60.) It states that "*any commercially available paint roller* can be mounted to the paint roller assembly of the present invention." (*Id.* at 2:57–59 (emphasis added).) This description is also consistent with the prior-art references

---

[2] In fact, Quali-Tech conceded in a pre-motion letter brief that to constitute a paint roller, the structural core must be sufficiently rigid to roll paint onto a surface. (ECF No. 52, at 2.)

cited in the '963 Patent, which regularly refer to a paint roller as having an inner cylinder coated with paint-retaining materials. (*See, e.g.*, U.S. Patent No. 5,210,899, at 4:40–43; U.S. Patent No. 6,256,828, at 1:6–10.)

A patentee is permitted to be his own lexicographer. If the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, then the patentee's meaning governs. *Phillips*, 415 F.3d at 1316. But Quali-Tech never demonstrated an intent to deviate from the ordinary and customary meaning of "paint roller" in the '963 Patent. Quali-Tech's argument is therefore foreclosed by the language of the '963 Patent itself. *See Phillips,* 415 F.3d at 1313 (holding that a patentee is presumed to have intended the ordinary meaning of a claim term in the absence of an *express* intent to the contrary).

Finally, Quali-Tech argues that its proffered construction was reasonable because it relied on its experts, especially the '963 Patent's inventor Song Kim, as a basis for its claim construction. (Opp'n 4.) Quali-Tech argues that Kim's testimony regarding the commercial implementations of mini paint rollers demonstrates that a person of ordinary skill in the art would understand that a paint roller does not need a rigid inner core. (*See id.*) Quali-Tech points to another of Kim's patents, U.S. Patent No. 8,016,733, for support. (*Id.*) The '733 patent discloses "a mini paint roller mounting assembly cut from a standard length of tubing about which has previously spirally wound a wide ribbon of thick napped fabric." (*Id*. at 4–5.) Quali-Tech argues that it was therefore reasonable in claiming that "a spirally wound ribbon of such material would be equivalent to the paint roller." (*Id*. at 5 (internal quotation marks omitted).)

Reliance on expert testimony may be reasonable in proffering or supporting proposed claim construction. But Quali-Tech went well beyond this. What Quali-Tech really argues is that it was reasonable to rely on extrinsic evidence in an attempt to circumvent the otherwise clear language of the '963 Patent. This contention is not supported by the law.

Nothing in the '963 Patent demonstrated the inventor's intent to have a special or more constrained meaning of paint roller. (*E.g.*, '963 Patent.) For example, the inventor of the '963 Patent did not claim an outer cylinder upon which a strip of fabric could be wound, nor did he claim an outer cylinder upon which a sleeve of paint-retaining material could be mounted. The inventor of the '963 Patent *did* claim an outer cylinder upon which "any commercially available paint roller can be mounted"—and Quali-Tech was accordingly constrained to this clear claim language. ('963 Patent at 2:57–59.)

It is a familiar canon of claim construction that while extrinsic evidence (such as expert and inventor testimony) can shed useful light on the relevant art, it is far less significant than the intrinsic record in determining the legally operative meaning of claim language. *Phillips*, 415 F.3d at 1317; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004). Extrinsic evidence is never to be used for the purpose of varying or contradicting the terms of the claims. *Markman*, 52 F.3d at 985 ("[E]xtrinsic evidence cannot add, subtract, or vary the limitations of the claims.").

Thus, Quali-Tech's proposed claim construction—that paint roller merely means paint-retaining material—is contrary to all the intrinsic evidence and does not conform to the standard canons of claim construction. *Cf. MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 918 (Fed. Cir. 2012) (finding a claim construction position objectively baseless where "no reasonable application of the principles enunciated in *Phillips*[, 415 F.3d 1303] supports its position"). This is a clear instance where no objectively reasonable litigant, relying on the specification to support its position, would believe that its claim construction could succeed. The Court therefore agrees with Linzer that Quali-Tech's proposed claim construction was objectively baseless.

2.   *Quali-Tech's infringement allegations were objectively baseless*

Quali-Tech asserts that its infringement allegations were not objectively baseless because it reasonably believed that Linzer's product embodied the limitation that a paint roller be mounted upon an outer cylinder, either literally or under the

8

doctrine of equivalents.  (Opp'n 8.)  The Court disagrees with this contention and finds that Quali-Tech's infringement claims were so unreasonable as to be objectively baseless.  The Court considers the baselessness of the literal infringement allegation and the infringement under the doctrine of equivalents allegation in turn.

Quali-Tech's claim that Linzer's product literally infringes the '963 Patent was plainly meritless.  Illustrations of the patented assembly next to the accused device emphasize the unreasonableness of Quali-Tech's literal-infringement allegation:



**Outer Cylinder upon which the paint roller is mounted**

**End-piece**

**Mounting Assembly of the '963 Patent**



**Linzer's Trim and Touch Up Product**

As depicted above, the mounting assembly of the '963 Patent mounts a paint roller (not shown) to an outer cylinder, which is then joined to an end piece.  ('963

Patent.)  In contrast, it is readily apparent that the Trim and Touch Up product joins a paint roller *directly* to an end piece and does not contain a distinct outer cylinder.

This disconnect between Linzer's product and the claim language should have been immediately apparent to Quali-Tech.  But, in an effort to circumvent this result, Quali-Tech contrived an extraordinary argument: examination of claim limitations to determine literal infringement may properly be performed after the final, operable product has been ripped apart.  (ECF No. 59, at 1.)  Quali-Tech argued that its literal-infringement claim was not objectively baseless because it reasonably believed that the Court would permit its disassembly of an accused product solely for the purpose of determining infringement.  (Opp'n 9.)

This position is inconsistent with established Federal Circuit law.  Linzer's product is not designed to be altered or assembled prior to use.  *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1556 (Fed. Cir. 1995) (finding that if a device is designed to be altered or assembled prior to operation, the manufacturer may be held liable for infringement if the device, as altered or assembled, infringes a valid patent.)  Rather, the paint roller included in Linzer's Trim and Touch Up paint assembly requires no modification or assembly whatsoever—it is the final, operable product.

Quali-Tech's inability to find legal authority permitting the disassembly of an accused product for infringement purposes is not, as Quali-Tech contends, a reflection of the issue's novelty.  (Opp'n 9.)  Rather, it is another unconvincing attempt to save a specious argument.  Given the clear claim limitations, no objectively reasonable litigant would believe it could succeed on a literal infringement claim.

Quali-Tech's infringement claim under the doctrine of equivalents is likewise objectively baseless.  Quali-Tech argued that Linzer's product infringed the claims of the '963 Patent via the doctrine of equivalents because the inner core of the Linzer's paint roller is an equivalent structure to the outer cylinder claimed in the '963 Patent.

/ / /

1  (ECF No. 59, at 13.)  But no reasonable litigant would think this argument was legally

2  sustainable.

3        It is well settled that the doctrine of equivalents cannot be employed in a

4  manner that wholly vitiates or nullifies a claim limitation.  *Warner-Jenkinson Co. v.*

5  *Hilton Davis Chem. Co.*, 520 U.S. 17, 29–30 (1997).  Quali-Tech's claim that the

6  inner core of Linzer's paint roller was equivalent to the claimed outer cylinder was

7  plainly unsustainable because if the Court had accepted that argument, Quali-Tech

8  could then not satisfy the limitation that a paint roller be *mounted upon* the outer

9  cylinder.  ('963 Patent 4:7.)  The bare paint-retaining material that remains once the

10  paint roller's inner core is removed is *not* a paint roller.

11        In sum, no reasonable litigant would think that Quali-Tech's infringement

12  allegations could succeed.  In order to maintain its allegations of infringement, Quali-

13  Tech disregarded the clear meaning of the claims of the '963 Patent and went to

14  extraordinary lengths to conjure and advance unsupported arguments that are

15  inconsistent with established precedent.  The Court agrees with Linzer that Quali-

16  Tech's infringement allegations were objectively baseless.

17        3.    *Quali-Tech pursued this litigation in subjective bad faith*

18        The circumstances evincing the objective baselessness of Quali-Tech's

19  claim-construction and infringement claims, taken in the aggregate, also give rise to

20  an inference that Quali-Tech was aware that its allegations lacked support and

21  persisted in this litigation in bad faith.

22        Quali-Tech could have projected likelihood of success of this infringement suit

23  through a perfunctory comparison of the accused device with the plain language of the

24  claims.  But instead, Quali-Tech opted to ignore the lack of a distinct outer cylinder or

25  its equivalent in Linzer's product.  Further, Quali-Tech contrived arguments that

26  ignored the clear meaning of the claims of the '963 Patent and misapplied Federal

27  Circuit precedent in an effort to save its baseless claim.  This raises serious concerns

28  / / /

about Quali-Tech's pre-suit investigation and whether it was conducted in a manner intended to ignore or overlook the weakness of the infringement allegations.

The record also establishes that Quali-Tech was aware of its perceived substantive shortcomings because it was faced with an early summary-judgment motion. This at least suggests that Quali-Tech should have paused to further investigate whether its positions were legally tenable. In the end, Quali-Tech never conceded the unavoidable reality that Linzer's product did not infringe. The fact that Quali-Tech lost on the merits is itself insufficient to find that the case is exceptional. But the record indicates by clear and convincing evidence that Quali-Tech was manifestly unreasonable in its proposed claim-construction and infringement allegations.

A party should not bear the expense of outcome-certain litigation. Regardless whether the claim was pursued with wrongful intent, as Linzer suggests, the circumstances in the aggregate reflect at least gross negligence on the part of Quali-Tech. Thus, the Court infers that its claim was both objectively baseless and brought in bad faith. The Court therefore finds that this case is exceptional and warrants an attorneys'-fees award.

**B. Attorneys' Fees**

The Ninth Circuit applies a two-part "lodestar" approach to assess whether a requested attorneys'-fees award is reasonable. *Gracie v. Gracie*, 217 F.3d 1060, 1070 (9th Cir. 2000). First, the Court must determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id*. The lodestar figure is presumptively reasonable, but it may be adjusted based on a weighing of the following factors:

/ / /

/ / /

/ / /

/ / /

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; . . . (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *City of Burlington v. Dague,* 505 U.S. 557, 566 (1992) (holding that the factor regarding the contingent nature of a fee agreement has been rejected).

Linzer requests a total of $128,465.65 in fees for 337.33 hours of work and $3,011.63 in costs.  (Mot. 17.)  In its lodestar analysis Defendants' counsel, David S. Richman Collen IP and David S. Richman, provide the following billing figures:

| Name | Designation | Years of Experience | Hours Billed | Hourly Rate | Total Fee |
|---|---|---|---|---|---|
| Jeffery A. Lindenbaum | Lead counsel | 10 | 197.6 | $375 | $74,100.00 |
| Jess Collen | Senior Partner | 25 | 6.62 | $530 | $3,508.60 |
| Jenny Slocum | Associate | 7 | 110.35 | $295 | $32,553.25 |
| Kristen Mogavero | First-year Associate | <1 | 4.76 | $255 | $1,213.80 |
| Edie A. Garvey; Richard Weinberg; Lauren Kennedy | Paralegals | 3–8 | 18 | $130–135 | $2,340.00–2,430.00 |
| David S. Richman | Local Counsel | 30 | 30.9 | $475 | $14, 677.50 |

The Court first addresses the propriety of Linzer's requested hourly rate, followed by the quantity of hours billed.  The Court then calculates the lodestar

/ / /

amount and adjusts it as necessary.  Finally, the Court addresses Counsels' requested costs.

        *1.      Counsels' hourly rates are reasonable*

In determining reasonable hourly rates, the Court considers the rates for similar work by attorneys of comparable skill, experience, and reputation in the community. *Van Skike v. Dir. of Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009).  The relevant community is where the district court sits.  *Id.*  The Court therefore considers attorneys'-fees awards in the Central District of California.

Attorney affidavits regarding prevailing fees in the community and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). In support of its Motion for Attorneys' Fees, Linzer submitted the declarations of attorneys David Richman and Jeffery A. Lindenbaum.  Richman has been practicing in the Central District of California for over 30 years.  (Richman Decl. ¶ 5.)  In his declaration, Richman testifies that the billable rates of Collen IP are reasonable for the respective levels of expertise of its attorneys and for the work performed in this case. (*Id.*)  The experience and reputation of each attorney who worked on the case are highlighted in Lindenbaum's declaration.  (Decl. Lindenbaum Exs. C–F.)  The Court considers these qualifications in analyzing reasonableness of counsels' hourly rate.

Linzer further supports its contention that these are reasonable hourly rates by noting that higher rates for attorneys in patent-infringement actions have been deemed reasonable by this Court.  *L.A. Printex Indus. v. William Carter Co.*,  No. CV 09-2449-JFW (FMOX), 2010 WL 4916634, at *2 (C.D. Cal. Dec. 1, 2010), *rev'd on other grounds*, *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012) (finding that an associate with 8 years of experience billing at $477 per hour and an associate with 5 years of experience billing at $364 per hour was reasonable); *see also In re Mgndichian*, 312 F. Supp. 2d 1250, 1263 (C.D. Cal. 2003) (recognizing patent law to be a specialized field warranting higher rates).

Finally, Linzer points to the *Laffey* Matrix, which shows that for 2012–2013, an average rate for an attorney with 7 years of experience was $383, an average rate for an attorney with 10 years of experience was $554, and an average rate for an attorney with 20+ years of experience was $753.  (Lindenbaum Decl. Ex. H.).  Although the *Laffey* Matrix was prepared in connection with the Baltimore and District of Columbia market, it provides additional guidance and has been cited with approval by other courts in this Circuit.[3]

Quali-Tech neither argues nor offers any evidence that the Linzer's attorneys' hourly rates are unreasonable.  (Opp'n 18.)  Quali-Tech simply argues that the total sum is excessive.  (*Id.*)  This conclusory assertion is insufficient to rebut Linzer's evidence.  *See United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990) (holding that the district court must assume that the rates established by the plaintiffs' evidence are reasonable where "[a]lthough the defendants disagreed with this evidence, they did not support their arguments with any affidavits or evidence of their own regarding the legal rates in the community").  The Court therefore finds counsels' rates to be reasonable and moves on to the analysis of the reasonableness of counsels' expended hours.

## 2.    *The majority of hours billed by counsel are reasonable*

When performing the lodestar calculation, the Court should exclude hours that were not reasonably expended.  *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983).  The Court therefore does not include excessive, redundant, or otherwise unnecessary hours.  (*Id.*)  The Court has conducted a thorough review of the billing statements

/ / /

---

[3] *E.g.*, *Young v. Polo Retail, LLC*, No. CV 02 4546 VRW, 2007 WL 951821, at *7 (N.D. Cal. Mar. 28, 2007) ("One reliable official source for rates that vary by experience levels is the *Laffey* matrix used in the District of Columbia."); *Fernandez v. Victoria Secret Stores*, LLC, No. CV 06-04149 MMM (SHX), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008) ("[W]here use of the *Laffey* matrix has been disapproved, it has been because it produced a rate that the court determined was *too low*.")

1  submitted by Counsel and determined, with certain exceptions discussed below, that

2  the majority of hours billed are reasonable.

3      Linzer expended a total of 337.33 hours of work in defending and obtaining

4  dismissal of Quali-Tech's baseless suit. (Mot. 16.)  The majority of the attorney work

5  in this case was performed by Lindenbaum and associate Jenny Slocum.  Lindenbaum

6  billed a total of 197.6 hours at a rate of $375 per hour.  (Mot. 11.)  Slocum billed a

7  total of 110.35 hours of work at a rate of $295 per hour.  (*Id.*)  But the hours

8  Lindenbaum's expended strike the Court as excessive.

9      Counsels' billing records reflect that Lindenbaum billed significantly higher

10  hours than associate Slocum for the same work.  For example, Lindenbaum's billing

11  entries that include preparation of the answer amounted to approximately 9.7 hours.

12  (Decl. Lindenbaum Ex. B at 7–8.)  In contrast, Slocum's work on the answer totals

13  only 2.8 hours.  (*Id.*)  Similarly, Lindenbaum's hours expended on the protective order

14  total 14.2 hours, contrasted with Slocum's 4.2.  (*Id.* at 4–5.)  Given Lindenbaum's

15  expertise and years of experience in patent law, these numbers strike the Court as

16  excessive—especially when compared to hours expended by the associate.   One

17  would have expected the hours to have been reversed.

18      The Court notes that the above hours are approximations.[4]   But these

19  approximations were made necessary by counsel failing to furnish the Court with

20  distinct, itemized time sheets; instead, counsel often aggregated several activities

21  within one entry, i.e. block billing. (Decl. Lindenbaum Ex. B.)  The Court declines to

22  guess at the exact allocation of hours for the multiple tasks included within each entry.

23      While Lindenbaum's billing rate was not unreasonable, the number of hours

24  expended is high.   The Court therefore finds that a 30 percent reduction in

25  Lindenbaum's billed hours is proper—a reduction of 59.28 hours.   This reduces

26  Lindenbaum's total fee by $22,230.00.

27

28  [4] The Court utilized the total hours billed for any entry that references preparation of the answer or
    protective order, regardless whether there were other activities included in the same entry.

16

The adjusted lodestar figure is $106,208.15, which represents 278.05 hours at the rates listed above.[5]   The Court finds this amount reasonable in light of the discussion above—especially when considering Linzer's success in this case and the objectively baseless infringement allegations it was forced to defend against.

### 3.   Counsel's costs are reasonable

Linzer also seeks recovery for its non-taxable costs.  (Mot. 16.)  Attorneys' fees under § 285 include costs that the prevailing party incurs in the preparation for and performance of legal services related to the suit.  *Cent. Soya Col v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983).   Upon review, Linzer's costs appear reasonable in light of the case activity.   Defendant expended a total of $3,393.60 in costs.  (Mot. 17.)  After deducting $381.97 in costs taxable under Federal Rule 54(d) and Local rule 54-3, the balance of costs is $3,011.63.  The Court accordingly awards that amount to Linzer.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] Lindenbaum billed an adjusted 138.32 hours at a rate of $375 per hour for a total fee of $51,870.00. Collen billed 6.62 hours at a rate of $530 per hour for a total fee of $3,508.60.  Slocum billed 110.35 hours at a rate of $295 per hour for a total fee of $32,553.25.  Mogavero billed 4.76 hours at a rate of $255 for a total fee of $1,213.80.  Richman billed 30.9 hours at a rate of $475 per hour for a total fee of $14,677.50.  Paralegals Garvey, Weinberg, and Kennedy collectively billed a total of 18 hours at a rate of between $130–135.  Counsel did not clearly identify for the Court how many of the 18 hours were billed at what rate.  The Court therefore averages the billed rate to $132.50.  The paralegals thus billed a total fee of $2,385.00.

# V.   CONCLUSION

For the reasons discussed above, Linzer's Motion for an Award of Attorneys' Fees and Costs is **GRANTED**.  The Court awards $106,208.15 in attorneys' fees and $3,011.63 in non-taxable costs for a total of $109,219.78.

**IT IS SO ORDERED.**


Arpil 24, 2013

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**